Index No. 13 CV 3079 (ALC)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DARREN FELIX

                                        Plaintiff,

                -against-

THE CITY OF NEW YORK and JOSE MORALES,

                                        Defendants.

# DEFENDANTS' MOTION TO DISMISS THE COMPLAINT UNDER FED. R. CIV. PRO. 12(b)(6)

*JEFFREY D. FRIEDLANDER*
*Acting Corporation Counsel of the City of New York*
*Attorney for Defendants City of New York*
*and Det. Morales*
*100 Church Street*
*New York, N.Y.  10007*


*Of Counsel:  Michael Chestnov*
*Linda Donahue*
*Alison G. Moe*
*Tel:  (212) 356-3534*
*Matter No. 2013-016959*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..........................................................................................iii

PRELIMINARY STATEMENT ..................................................................................... 1

STANDARD OF REVIEW ............................................................................................ 2

STATEMENT OF FACTS .............................................................................................. 5

      A.   The Photo Array...........................................................................6

      B.   Ms. Torres' Testimony at the Criminal Trial.......................................7

            i.   Alleged Encounter Prior to Ms. Torres' Testimony...................................................7

            ii.   Ms. Torres' Initial Testimony .................................7

            iii.   The Mid-Testimony Recess ...................................8

            iv.   Ms. Torres' Post-Recess Testimony on November 22, 2004 and her November 23, 2004 Testimony...........................8

            v.   Plaintiff's Conviction and the Post-Trial Investigation.................................................9

ARGUMENT

   POINT I

      PLAINTIFF FAILS TO STATE A CLAIM FOR MUNICIPAL liability ON ANY THEORY against the city of new york under 42 u.s.c. § 1983 .............................................. 10

      A.   There was no underlying Constitutional Violation .......................................................10

            1.   The Alleged *Brady* Material Was Disclosed......................................................10

            2.   The Alleged *Brady* Material Did Not Create a Reasonable Probability of a Different Outcome .......................................12

**Page**

B.  Municipal liability claims cannot be asserted against the City for prosecutorial acts of prosecutors to which they are entitled to absolute immunity ................................................................. 14

C.  Even if the City Could be Held Liable for the Actions, or Inactions, of the District Attorney, *and* Plaintiff Could Plead Facts to Make his Claim of an Underlying Constitutional Violation Plausible, Plaintiff Has Still Failed to Set Forth a Plausible *Monell* Claim ................................................ 18

1.  Plaintiff Fails to Allege a Pattern of Similar Brady Violations by BXDAO. ................................. 21

POINT II

PLAINTIFF FAILS TO ALLEGE A BRADY VIOLATION BY DET. MORALES ........................................ 28

POINT III

DET. MORALES IS ENTITLED TO QUALIFIED IMMUNITY .................................................................. 30

CONCLUSION ................................................................................................. 32

## TABLE OF AUTHORITIES

<u>**Cases**</u>                                                                                                    <u>**Pages**</u>

*Amnesty Am. v. Town of W. Hartford*,
    361 F.3d 113(2d Cir. 2004) ................................................................................... 18

*Arrocha v. City Univ. of N.Y.*,
    878 F. Supp. 2d 364 (E.D.N.Y. 2012) ..................................................................... 4

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..................................................................................... 2, 3, 5

*Awelewa v. N.Y. City*,
    No. 11 Civ. 778 (NRB), 2012 U.S. Dist. LEXIS 24244 (S.D.N.Y. Feb. 22, 2012) .................. 4

*Batista v. Rodriguez*,
    702 F.2d 393 (2d Cir. 1983) ............................................................................ 19, 20

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)........................................................................................ 2, 3

*Board of the County of Comm'rs of Bryan County v. Brown*,
    520 U.S. 397 (1997)........................................................................................... 18

*Boley v. Durets*,
    12-CV-4090 (ARR) (JO), 2013 U.S. Dist. LEXIS 177862 (E.D.N.Y. Dec. 10, 2013) ............. 4

*Brady v. Maryland*,
    373 U.S. 83 (1963).............................................................................................. 28

*Brass v. Am. Film Techs., Inc.*,
    987 F.2d 142 (2d Cir. 1993) ................................................................................. 3

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147(2d Cir. 2002) .................................................................................. 3

*Cheng v. Greiner*,
    02 Civ. 4804 (DC), 2003 U.S. Dist. LEXIS 21286 (S.D.N.Y. Nov. 20, 2003)....................... 12

*City of Canton v. Harris*,
    489 U.S. 378 (1989)...................................................................................... 18, 20

*City of Los Angeles v. Heller*,
    475 U.S. 796 (1986).......................................................................................... 10

*Coggins v. County of Nassau*,
    07-CV-3624 (JFB), 2008 U.S. Dist. LEXIS 48239 (E.D.N.Y. June 20, 2008)........................ 4

**Cases**                                                                                                **Pages**

*Connick v. Thompson*,
  131 S. Ct. 1350 (2011) ................................................................................ 17, 18, 19, 20, 22, 23

*Doe v. City of N.Y.*,
  No. 09 Civ. 9895 (SAS), 2013 U.S. Dist. LEXIS 30010 (S.D.N.Y. Mar. 4, 2013) ................ 18

*Flores v. Demskie*,
  215 F.3d 293 (2d Cir. 2002) ............................................................................................... 22, 25

*Green v. City of New York*,
  465 F.3d 65 (2d. Cir. 2006) ........................................................................................................ 19

*Harlow v. Fitzgerald*,
  457 U.S. 800 (1982)). ................................................................................................................. 30

*Hathaway v. Coughlin*,
  37 F.3d 63 (2d Cir. 1994) ........................................................................................................... 30

*Hendrix v. City of New York*,
  12 CV 5011 (ILG) (CLP), 2013 U.S. Dist. LEXIS 179259 (E.D.N.Y. Dec. 20, 2013) ......... 3-4

*Imbler v. Pachtman*,
  424 U.S. 409 (1976) ....................................................................................................... 14, 15, 16

*In re Elevator Antitrust Litig.*,
  502 F.3d 47 (2d Cir. 2007) ............................................................................................................ 2

*Int'l Audiotext Netword, Inc. v. AT&T Co.*,
  62 F.3d 69 (2d Cir. 1995) .............................................................................................................. 3

*Jenkins v. City of New York*,
  478 F.3d 76 (2d Cir. 2007) ................................................................................................... 19, 20

*Jocks v. Tavernier*,
  316 F.3d 128 (2d Cir. 2003) ...................................................................................................... 29

*Jones v. City of New York*,
  12-CV-1739 (JBW), 2013 U.S. Dist. LEXIS 179265 (E.D.N.Y. Dec. 20, 2013) ............. 16, 17

*Jovanovic v. City of New York*,
  486 Fed. Appx. 149 (2d Cir. 2012) ........................................................................................... 29

*Jovanovich v. City of New York*,
  No. 04 CV 8437 (PAC), 2010 U.S. Dist. LEXIS 144388 (S.D.N.Y. Sept. 28, 2010) ............. 27

**Cases**                                                                                                            **Pages**

*Kaminsky v. Rosenblum,*
   929 F.2d 922 (2d Cir. 1991) ................................................................................................ 30

*Kennedy v.* Empire *Blue Cross & Blue Shield,*
   989 F.2d 588 (2d Cir. 1993) .................................................................................................. 4

*Lennon v. Miller,*
   66 F.3d 416 (2d Cir. 1995) .................................................................................................. 30

*Malley v. Briggs,*
   475 U.S. 335 (1986)............................................................................................................. 30

*Mendez v. Artuz,*
   202 F.3d 411 (2d Cir. 2002) .......................................................................................... 22, 24

*Monell v. Department of Social Services,*
   436 U.S. 658 (1978).............................................................................................................. 1

*Morales v. Portuondo,*
   165 F. Supp.2d 601 (S.D.N.Y. 2001) ................................................................................. 22

*Morrissey v. City of New York,*
   963 F. Supp. 270 (S.D.N.Y. 1997) ..................................................................................... 18

*Newton v. City of New York,*
   681 F. Supp. 2d 473 (S.D.N.Y. 2010) ................................................................................ 19

*Obilo v. City Univ. of N.Y.,*
   No. 01 CV 5118 (DGT), 2003 U.S. Dist. LEXIS 2886 (E.D.N.Y. Feb. 28, 2003) .................... 4

*People v. Aquilar,*
   14 Misc.3d 1 (Sup. Ct. Bronx Co. 2006). ........................................................................... 22

*People v. Bagarozy,*
   132 A.D.2d 255 (1st Dept. 1987)........................................................................................ 22

*People v. Bailey,*
   121 A.D.2d 189 (1st Dept. 1986)........................................................................................ 21

*People v. Banfield,*
   194 A.D.2d 330 (1st Dept. 1993)................................................................................... 22, 23

*People v. Bruno,*
   Ind. No. 0027/97, N.Y.L.J., 4/23/03 at p.19 ............................................................. 22, 25-26

**Cases**                                                      **Pages**

*People v. Butler,*
185 A.D.2d 141 (1st Dept. 1992) ............................................................................ 22

*People v. Castro,*
147 A.D. 2d 410 (1st Dept. 1989) ....................................................................... 22, 23

*People v. Collins,*
173 Misc.2d 350 (Sup. Ct. Bronx Co. 1997) ........................................................... 24

*People v. DeJesus,*
88 A.D.2d 554 (1st Dept. 1982) ............................................................................. 21

*People v. Ellis,*
94 A.D.2d 652 (1st Dept. 1983) ............................................................................. 21

*People v. Galloway,*
77 A.D.2d 542 (1st Dept. 1980), *aff'd,* 54 N.Y.2d 396 (1981) .............................. 21

*People v. Garcia,*
46 A.D.3d 461 (1st Dept. 2007) ............................................................................. 22

*People v. Hamilton,*
121 A.D.2d 176 (1st Dept. 1986) ........................................................................... 22

*People v. Hernandez,*
185 A.D.2d 147 (1st Dept. 1992) ........................................................................... 22

*People v. Hicks,*
102 A.D.2d 173 (1st Dept. 1984) ........................................................................... 21

*People v. Hudson,*
104 A.D.2d 157 (1st Dept. 1984) ........................................................................... 21

*People v. Johnson,*
114 A.D.2d 210 (1st Dept. 1986) ........................................................................... 22

*People v. Johnson,*
191 Misc.2d 105 (Sup. Ct. Bronx Co. 2002) ..................................................... 22, 24

*People v. Johnson,*
212 A.D.2d 362 (1st Dept. 1995) ........................................................................... 22

*People v. Jorge,*
171 A.D.2d 498 (1st Dept. 1991) ........................................................................... 22

**Cases**                                                               **Pages**

*People v. King,*
   241 A.D.2d 329 (1st Dept. 1997)..................................................... 22, 26

*People v. Lantigua,*
   228 A.D.2d 213 (1st Dept. 1996)..................................................... 22, 25

*People v. LaPorte,*
   306 A.D.2d 93 (1st Dept. 2003)........................................................... 22

*People v. Lewis,*
   174 A.D.2d 294 (1st Dept. 1992)..................................................... 22, 23

*People v. McReynolds,*
   175 A.D.2d 31 (1st Dept. 1991)........................................................... 22

*People v. Mikel,*
   274 A.D.2d 325 (1st Dept. 1997)................................................22, 23-24

*People v. Mudd,*
   184 A.D.2d 388 (1st Dept. 1992)......................................................... 22

*People v. Negron,*
   161 A.D.2d 537 (1st Dept. 1990)......................................................... 22

*People v. Nunez,*
   74 A.D.2d 805 (1st Dept. 1980)........................................................... 21

*People v. Okafor,*
   N.Y.L.J. 9/8/89 at p.21..................................................................... 25

*People v. Olivero,*
   272 A.D.2d 174 (1st Dept. 2000)......................................................... 22

*People v. Olmo,*
   153 A.D.2d 544 (1st Dept. 1989)......................................................... 24

*People v. Ortega,*
   241 A.D.2d 369 (1st Dept. 1997)......................................................... 26

*People v. Ortiz,*
   69 A.D.3d 490 (1st Dept. 2010)........................................................... 22

*People v. Ortiz,*
   116 A.D.2d 531 (1st Dept. 1986)......................................................... 22

**Cases**                                                                    **Pages**

*People v. Perez,*
   A.D.2d 468 (1st Dept. 1982) ................................................................... 21

*People v. Poventud,*
   10 Misc. 3d 337 (Sup. Ct. Bronx Co. 2005) ........................................... 22

*People v. Ramos,*
   201 A.D.2d 78 (1st Dept. 1994) .............................................................. 25

*People v. Rosa,*
   108 A.D.2d 531 (1st Dept. 1985) ............................................................ 21

*People v. Roman,*
   150 A.D.2d 252 (1st Dept. 1989) ............................................................ 22

*People v. Rutter,*
   202 A.D.2d 123 (1st Dept. 1994) ....................................................... 22, 24

*People v. Shears,*
   184 A.D.2d 357 (1st Dept. 1992) ............................................................ 22

*People v. Slaughter,*
   189 A.D.2d 157 (1st Dept. 1993) ............................................................ 22

*People v. Spruill,*
   5 A.D.3d 318 (1st Dept. 2004) ................................................................ 22

*People v. White,*
   200 A.D.2d 351 (1st Dept. 1994) ............................................................ 25

*Reynolds v. Giuliani,*
   506 F.3d 183 (2d Cir. 2007) .............................................................. 19, 20

*Ricciuti v. N.Y.C. Transit Auth.,*
   124 F.3d 123 (2d Cir. 1997) .................................................................... 29

*Riccuiti v. N.Y.C. Transit Auth.,*
   941 F.2d 119 (2d Cir. 1991) .................................................................... 19

*Samuels v. Air Transp. Local, 504,*
   992 F.2d 12, 15 (2d Cir. 1993) .................................................................. 3

*Sarus v. Rotundo,*
   831 F.2d 397 (2d Cir. 1987) .................................................................... 18

**Cases**                                                                                                      **Pages**

*Saucier v. Katz,*
    533 U.S. 194 (2001).......................................................................................... 30

*Strickler v. Greene,*
    527 U.S. 263 (1999)....................................................................... 12, 13, 28, 29

*Thomas v. Roach,*
    165 F.3d 137 (2d Cir. 1999) ............................................................................ 20

*Turpin v. Mailet,*
    619 F.2d 196 (2d Cir. 1980) ............................................................................ 21

*United States v. Bagley,*
    473 U.S. 667 (1985).......................................................................................... 25

*United States v. Brown,*
    582 F.2d 197 (2d Cir 1978) ............................................................................. 11

*United States v. Coppa,*
    267 F.3d 132 (2d Cir. 2001) ...................................................................... 11, 12

*United States v. Leroy,*
    687 F.2d 610 (2d Cir. 1982) ............................................................................ 11

*United States v. Rittweger,*
    524 F.3d 171 (2d Cir. 2008) ...................................................................... 11, 28

*United States v. Stewart,*
    513 F.2d 957 (2d Cir. 1975) ............................................................................ 11

*Van de Kamp v. Goldstein,*
    555 U.S. 3335 (2009)........................................................................ 14, 15, 16, 17

*Vasquez v. City of New York,*
    99 Civ. 4606 (DC), 2000 U.S. Dist. LEXIS 8887 (S.D.N.Y. June 29, 2000)(Chin, J.) ............ 3

*Walker v. City of New York,*
    974 F.2d 292 (2d Cir. 1992) ...................................................................... 14, 15, 16

*People v. Williams,*
    212 A.D.2d 388 (1st Dept. 1995)...................................................................... 22

*People v. Woods,*
    9 A.D.2d 293 (1st Dept. 2004)......................................................................... 22

**Cases**                                                                       **Pages**

*People v. World,*
    157 A.D.2d 567 (1st Dept. 1990)................................................................. 22

*Wray v. City of N.Y.,*
    490 F.3d 189 (2d Cir. 2007) ...................................................................... 10

**Statutes**

42 U.S.C. § 1983................................................................... 1, 10, 18, 20, 21, 29

Fed. R. Civ. P. 12(b)(6)......................................................................... 2, 4

Fed. R. Civ. P. 12(d) ............................................................................... 4

Fed. R. Civ. P. 56 .................................................................................. 4

Fed. R. Civ. Proc. 8(a)(2)........................................................................ 3

N.Y.C.P.L.R §30.10(b) ............................................................................ 9

N.Y. Penal L. §§ 110.05(3); 125.25; 120.10; 265.03 .................................... 9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------- x

DARREN FELIX,

                                        Plaintiff,

                -against-                              13 Civ. 3079 (ALC)

THE CITY OF NEW YORK, and JOSE MORALES,

                                        Defendants.

----------------------------------------------------------------------- x

## DEFENDANTS' MOTION TO DISMISS THE COMPLAINT UNDER FED. R. CIV. PRO. 12(B)(6)

## PRELIMINARY STATEMENT

Plaintiff brought this action, pursuant to 42 U.S.C. § 1983, against the City for alleged acts of misconduct of the Bronx District Attorney's Office ("BXDAO"), and Det. Morales regarding an attempted murder conviction, stemming from a shooting on July 23, 2003, that was vacated following a post-conviction investigation by the BXDAO.  Plaintiff alleges deprivation of his rights to Due Process and a Fair Trial related to an alleged failure to disclose *Brady* material under the 5th, 6th and 14th Amendments against: (1) the City of New York ("City") for the alleged acts of the BXDAO for deliberate indifference/failure to train, supervise and discipline ADAs for *Brady* violations under *Monell v. Department of Social Services*, 436 U.S. 658 (1978); and (2) against Det. Morales for allegedly failing to disclose that Sara Torres, an eyewitness who identified plaintiff in a photo array, allegedly initially said that plaintiff "looked like" the shooter, before indicating that she was sure it was him, and that after Ms. Torres said she was sure plaintiff was the shooter, Det. Morales allegedly told her that she had picked out the person who was arrested for the shooting.  In large part, plaintiff's *Brady* claim

centers on plaintiff's allegation that Ms. Torres initially said that plaintiff "looked like" the perpetrator, and that such characterization was an equivocal identification tending to exculpate the defendant – not a positive identification – and that defendants failed to disclose this statement to plaintiff during the criminal proceedings; and that during the trial, this same eyewitness told the ADA that the defendant was not the shooter, and that such statement was not disclosed.

Defendants City and Det. Morales respectfully submit this Fed. R. Civ. P. 12(b)(6) motion to dismiss the complaint in its entirety with prejudice on the grounds that:  (1) plaintiff cannot maintain an action against the City under *Monell* for allegations against the BXDAO protected by absolute immunity; (2) plaintiff has failed to allege an actionable *Brady* violation against Det. Morales; and (3) Det. Morales is entitled to qualified immunity.

## **STANDARD OF REVIEW**

Under FED. R. CIV. P. (12)(b)(6), a pleading may be dismissed for "failure to state a claim upon which relief can be granted."  *Id.*  In order to survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  A pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 570.  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."  *Id.* at 557; *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to nudge plaintiffs' claims across the line from conceivable to plausible.") (internal quotation marks and alteration omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

2

alleged." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Thus, "where the well-pleaded facts do not permit the court to infer more that the mere possibility of misconduct," the complaint has failed to demonstrate that the pleader is entitled to relief. *Id.* at 679 (citing Fed. R. Civ. Proc. 8(a)(2)). In making its evaluation, a court must undertake a "context-specific task" that requires it to draw on its judicial experience and common sense. *Id.*

When determining the sufficiency of plaintiff's claim for Rule 12(b)(6) purposes a court should consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." *Samuels v. Air Transp. Local 504,* 992 F.2d 12, 15 (2d Cir. 1993); *see also Int'l Audiotext Network, Inc. v. AT&T Co.,* 62 F.3d 69, 72 (2d Cir. 1995) (*per curiam*). For purposes of dismissal, the complaint "is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152-53 (2d Cir. 2002) (quoting *Int'l Audiotext,* 62 F.3d at 72). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint "relies heavily upon its terms and effect," which renders the document "integral" to the complaint." *Id.* at 153 (internal citations omitted). Additionally, "a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)," including arrest reports, criminal complaints, indictments, and criminal disposition data. *Vasquez v. City of New York,* 99 Civ. 4606 (DC), 2000 U.S. Dist. LEXIS 8887, at *3 (S.D.N.Y. June 29, 2000)(Chin, J.) (citations omitted). *See also, Brass v. Am. Film Techs., Inc.,* 987 F.2d 142, 150 (2d Cir. 1993); *Hendrix v. City of New York,* 12 CV 5011 (ILG) (CLP), 2013 U.S. Dist. LEXIS 179259, at *6-8

(E.D.N.Y. Dec. 20, 2013)(taking judicial notice of police arrest report on 12(b)(6) motion); *Awelewa v. N.Y. City*, No. 11 Civ. 778 (NRB), 2012 U.S. Dist. LEXIS 24244, at *9-10 (S.D.N.Y. Feb. 22, 2012) (finding that in a Fed. R. Civ. P. 12(b)(6) motion to dismiss, "[w]hile [the Court] may of course not use public records to establish the truth of a third-party assertion documented therein (i.e. that plaintiff actually attempted to leave the store with merchandise for which she had not paid), the Court may rely on such records to show here that store personnel made the recorded allegations, whether true or not, to [the police]."); *Coggins v. County of Nassau*, 07-CV-3624 (JFB), 2008 U.S. Dist. LEXIS 48239, at *19-20 (E.D.N.Y. June 20, 2008)("courts routinely take judicial notice -- at the motion to dismiss stage -- of transcripts of related judicial proceedings, including criminal proceedings"); *Obilo v. City Univ. of N.Y.*, No. 01 CV 5118 (DGT), 2003 U.S. Dist. LEXIS 2886, at *13-18 (E.D.N.Y. Feb. 28, 2003)(considering, *inter alia*, police complaint report and complaint follow up reports ("DD5s"), on 12(b)(6) motion to dismiss.  Moreover, "documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit" may also be considered on a 12(b)(6) motion.  *Boley v. Durets*, 12-CV-4090 (ARR) (JO), 2013 U.S. Dist. LEXIS 177862, at *7 (E.D.N.Y. Dec. 10, 2013)(citing *Arrocha v. City Univ. of N.Y.*, 878 F. Supp. 2d 364, 368 (E.D.N.Y. 2012)).  The Court may therefore take judicial notice of, and/or otherwise consider, the documents annexed as Exhibits to the Declaration of Michael Chestnov, dated January 10, 2014, ("Chestnov Decl."), as well as the facts contained therein.[1]

---

[1] If "matters outside the pleading are presented to and not excluded by the court," the Court may *sua sponte* convert the motion to dismiss into a motion for summary judgment under Fed. R. Civ. P. 56.  *See* FED. R. CIV. P. 12(d); *see also, Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588 (2d Cir. 1993) (affirming district court's conversion, pursuant to FED. R. CIV. P. 12(b), of defendant's motion to dismiss into a FED. R. CIV. P. 56 motion for summary judgment and subsequent dismissal of the complaint).

## STATEMENT OF FACTS[2]

On July 23, 2003, at approximately 10:00 p.m., an individual was shot outside of a McDonald's Restaurant located at 86 East 167th Street in the Bronx. (Complaint, annexed to the Chestnov Decl. as Exhibit ("Ex.") "A", at ¶ 11). Witnesses informed the police that two teenagers, one male and one female, engaged in an argument with an older male patron of the McDonalds, which eventually resulted in the older male patron getting shot outside of the McDonald's by the young male suspect. (July 25, 2003 DD-5 reflecting an interview of Sarah Torres on July 24, 2004 at 10:50 p.m., annexed to the Chestnov Decl. as Ex. "F"; July 24, 2003 DD-5 reflecting an interview conducted on July 24, 2004 at 10:35 p.m. of a security guard working at the McDonald's, annexed to the Chestnov Decl. as Ex. "I"). NYPD officers responded to the scene of the shooting and put out a description of the suspects over the radio. (Ex. At at ¶ 13). Police officers saw plaintiff, who met the description of the shooter, on the street near the shooting. (Ex. A at ¶ 14; Transcript of Plaintiff's July 25, 2003 Videotaped Statement, annexed to the Chestnov Decl. as Ex. "C", at 9:10-10:2). Plaintiff ran from the police and was eventually found hiding in the garbage room of a nearby building. (Ex. C at 3:15-4:24, 20:15-21). Plaintiff was detained and subsequently presented in a show-up procedure with Adam Rodriguez, a sanitation employee who happened to be driving by the McDonald's at the time of the shooting. (Ex. A at ¶ 15; July 24, 2003 DD-5 reflecting an interview of Adam Rodriguez, annexed to the Chestnov Decl. as Ex. "J"). Mr. Rodriguez identified plaintiff as the shooter and plaintiff was then brought to the hospital, where the victim, Kantara Baragi, also identified him as the shooter. (Ex. A at ¶ 15; Ex. J; Transcript of Adam Rodriguez's November

_____

[2] For the purposes of this Fed. R. Civ. P.12(b)(6) motion, the Court must assume the truth of the well-pleaded facts alleged by plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-80. Mindful of that requirement, defendants have set forth the facts herein in the light most favorable to plaintiff. Defendants reserve the right to dispute these facts should this case proceed to discovery.

16, 2004 testimony in *People v. Felix*, annexed to the Chestnov Decl. as Ex. "H" at 84:15-85:10; July 24, 2003 DD-5 reflecting a show-up at Lincoln Hospital, annexed to the Chestnov Decl. as Ex. "K").

Plaintiff was brought to a police precinct and gave a voluntary statement.  (Ex. A at ¶ 16).   Plaintiff told the police that he was hanging out in front of a building near the McDonald's with his girlfriend, Angelina Rodriguez, and was about to smoke a blunt, when her cousin "Howsto" and a female, whom plaintiff referred to as a "Tomboy", approached them. (Plaintiff's hand-written statement, dated July 25, 2003, annexed to the Chestnov Decl. as Ex. "B"; Ex. C at 3:15-5:5, 6:2-16).  Plaintiff claimed that "Howsto" and the woman he referred to as a "Tomboy" told plaintiff that they had just been disrespected in the McDonald's and that they were going upstairs to get a gun so "Howsto" could shoot the person who disrespected them. (Ex. B; Ex. C at 6:17-7:20).   Upon hearing this, plaintiff indicated that he walked towards the McDonald's and observed "Tomboy" punch the victim and "Howsto" shoot him five or six times.  (Ex. B, Ex. C at 7:24-8:15, 14:17-25).  He then told the police that he observed "Howsto" run upstairs to his girlfriend's apartment.  (Ex. C at 8:19-22).

A.      **The Photo Array**

On the night of the shooting, one of the McDonald's employees, Sarah Torres, informed the police that she had seen the shooter at the McDonald's on a number of previous occasions and that shortly prior to the argument that led to the shooting, the shooter had tried to "pick her up."  (Ex. F).  Approximately a week later, Ms. Torres was shown a photo array by defendant Det. Morales, which had plaintiff's picture in it.  (Ex. A at ¶ 21; July 30, 2003 DD-5 regarding a Positive Identification being made at a Photo Array and copy of the Photo Array annexed to the Chestnov Dec. as Ex. "G").  Plaintiff claims that upon being shown this photo array, Ms. Torres told Det. Morales that the picture of plaintiff "look[ed] like" the shooter.  (Ex.

6

A at ¶ 24).  Plaintiff alleges that Det. Morales then asked her if she was "sure" that plaintiff was the shooter, and Ms. Torres responded that she was sure he was the shooter.  (*Id.* at ¶¶ 25-26). After she indicated that she was sure the individual she picked out was the shooter, Det. Morales allegedly told her that she had selected the individual who had been arrested for the shooting. (*Id.* at ¶ 26).  Det. Morales reported that Ms. Torres made a positive identification of plaintiff, but never revealed to the BXDAO that Ms. Torres allegedly initially stated that plaintiff "looked like" the shooter and that he purportedly told Ms. Torres that she had identified the person who had been arrested.  (*Id.* at ¶¶ 30-32, relying on the July 30, 2003 DD-5).

**B.      Ms. Torres' Testimony at the Criminal Trial**

**i.      Alleged Encounter Prior to Ms. Torres' Testimony**

Shortly before Ms. Torres testified at plaintiff's criminal trial on November 22, 2004, plaintiff claims that Ms. Torres encountered plaintiff in the hallway outside the courtroom as he was being escorted inside.  (Ex. A at ¶¶ 42-43).  Upon allegedly seeing plaintiff being escorted inside the courtroom, plaintiff claims that Ms. Torres immediately told the Assistant District Attorney ("ADA") prosecuting the case that plaintiff was not the shooter.  (*Id.* at ¶ 43-44).  Plaintiff alleges that the ADA told Ms. Torres that Ms. Torres was mistaken, that criminal defendants often change their appearance, that plaintiff was actually the shooter, and that Ms. Torres would be wrong not to identify plaintiff as the shooter in court. (*Id.* at ¶¶ 45-46).

**ii.      Ms. Torres' Initial Testimony**

Towards the beginning of Ms. Torres' testimony at the criminal trial, she testified that: (1) she saw the shooting; (2) that she did not see the shooter in the courtroom; and (3) if she saw the shooter on the day of her testimony, she would still be able to recognize him.  (Ex. A at ¶ 47; Ms. Torres' November 22, 2004 Testimony in *People v. Felix*, annexed to the Chestnov Decl. as Ex. "D", at 7:23-8:7).

### iii.     The Mid-Testimony Recess

Shortly after Ms. Torres gave this testimony, the ADA requested a recess and the court granted her permission to talk to Ms. Torres during this mid-testimony break, outside the presence of defense counsel.  (Ex. A at ¶¶ 48-49; Ex. D at 28:10-31:16).  The ADA then spoke to Ms. Torres in a hallway outside the courtroom.  (Ex. A at ¶ 50).  During this conversation, plaintiff claims that Ms. Torres reiterated that plaintiff was not the shooter and that the wrong man was on trial.  (*Id.* at ¶ 52).  Plaintiff asserts that the ADA told Ms. Torres that plaintiff was the shooter, and that Ms. Torres would be wrong to continue to deny that she recognized plaintiff on the witness stand.  (*Id.* at ¶ 53).

### iv.     Ms. Torres' Post-Recess Testimony on November 22, 2004 and her November 23, 2004 Testimony

Following this break, Ms. Torres resumed testifying and changed her testimony to say that she could no longer remember what the shooter looked like.  (Ex. A at ¶ 55; Ex. D at 32:9-33:12).   This change in testimony enabled the ADA to introduce Ms. Torres' prior photographic identification of plaintiff, where she said she was sure that the person she identified in the photo array was the shooter.  (Ex. A at ¶¶ 25-26, 58; Ms. Torres' November 23, 2004 Testimony in *People v. Felix*, annexed to the Chestnov Decl. as Ex. "E", at 85:1-87:18). Plaintiff's criminal defense attorney was given a full opportunity to cross-examine Ms. Torres regarding what had occurred during the break in her testimony, including what she discussed with the ADA during the break as well as any reasons for Ms. Torres' changed testimony.  (See Ex. E).  During summation, and consistent with Ms. Torres' testimony at trial, the ADA argued that the jury should convict plaintiff because Ms. Torres had positively identified him in a photo array, and that Ms. Torres simply could no longer remember what the perpetrator looked like. (Ex. A at ¶ 59; See Ex. D; Ex. E).

8

### v.      Plaintiff's Conviction and the Post-Trial Investigation

In addition to Ms. Torres' testimony, another witnesses, Adam Rodriguez, who was a sanitation employee who happened to be collecting garbage outside of the McDonald's at the time of the incident, testified at trial that plaintiff was the shooter.  (Ex. H  at 50:9-21, 84:15-85:10, 86:20-25).  Moreover, upon information and belief, the victim also testified at trial that plaintiff was the shooter.  In fact, upon information and belief, both of these witnesses were able to make an in court identification of plaintiff during their testimony.  (See Ex. H at 50:9-21).  Moreover, as discussed *infra*, Ms. Torres also testified that the shooter had previously told her his name, and while she did not remember it, she remembers that it started with a "D".  (Ex. D at 11:23-12:14).  Accordingly, on December 9, 2004 plaintiff was convicted of attempted murder, assault, and criminal possession of weapon and was subsequently sentenced to a prison term. (Ex. A at ¶ 60).

In July of 2009, approximately a year after the statute of limitations had run on these charges,[3] the Legal Aid Society sent a letter to the District Attorney detailing the results of an investigation into the incident that they conducted that: (1) brought the alleged *Brady* violations to the District Attorney's Office's attention and (2) presented evidence showing that the actual shooter was an individual named Justo Hechavarria.  (Ex. A at ¶¶ 68-70; Ex. A at "Exhibit A", 2:15-6:24).  Upon receiving the results of this investigation, the BXDAO conducted its own nearly year long investigation into the allegations raised by the Legal Aid Society.  (Ex. A at ¶ 71; Ex. A at "Exhibit A", 2:15-6:24).  On May 7, 2010, the BXDAO agreed to vacate plaintiff's conviction in light of the newly discovered evidence regarding Justo Hechavarria,

---

[3] There is a five year statute of limitations on all felonies other than class A felonies and certain sexual offenses.  *See* N.Y. C.P.L. § 30.10 (b).  Attempted murder in the second degree and first

which cast doubt on their ability to prove the charges beyond a reasonable doubt.  (Ex. A at "Exhibit A", 2:15-7:6).

## ARGUMENT

### POINT I

### PLAINTIFF FAILS TO STATE A CLAIM FOR MUNICIPAL LIABILITY ON ANY THEORY AGAINST THE CITY OF NEW YORK UNDER 42 U.S.C. § 1983

To establish a *Monell* claim, a plaintiff is required to plead and prove three elements:  (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right.  *Wray v. City of N.Y.*, 490 F.3d 189, 195 (2d Cir. 2007) (quotations omitted).  However, as a threshold matter, in order to hold a municipality liable on a *Monell* claim, plaintiff must first establish that his constitutional rights were violated by a City actor.  *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

### A.    There was no underlying Constitutional Violation

#### 1.    The Alleged *Brady* Material Was Disclosed

Plaintiff's *Monell* claim is predicated on policies and practices of the BXDAO. (Ex. A at ¶¶ 73-93).  Thus, in order for plaintiff's *Monell* claim to survive a motion to dismiss, plaintiff must plead facts that would make it plausible that a member of the BXDAO violated his constitutional rights.  *See Heller,* 475 U.S. at 799.  In his complaint, plaintiff alleges that the ADA who prosecuted his criminal case failed to disclose *Brady* material.  Specifically, plaintiff alleges that the ADA failed to reveal Ms. Torres' purported statement in the minutes preceding her testimony that plaintiff was not the shooter, nor did the ADA disclose the exculpatory

---

degree assault are class B felonies, while criminal possession of a weapon in the second degree is a class C felony.  *See* N.Y. Penal L. §§ 110.05(3); 125.25; 120.10; 265.03.

statements Ms. Torres allegedly made at her mid-testimony break.  (See Ex. A at ¶¶ 42-64).  However the failure to disclose these alleged statements do not amount to a *Brady* violation, since "evidence is not 'suppressed' if the defendant either knew . . . or should have known, of the essential facts permitting him to take advantage of any exculpatory evidence."  *United States v. Leroy*, 687 F.2d 610, 618 (2d Cir. 1982) (citations omitted).  *See also United States v. Brown*, 582 F.2d 197, 200 (2d Cir 1978) ("the government is not required to make a witness' statement known to a defendant who is on notice of the essential facts which would enable him to call the witness and thus take advantage of any exculpatory testimony that he might furnish") (quoting *United States v. Stewart*, 513 F.2d 957, 960 (2d Cir. 1975)).  "*Brady* information . . . must be disclosed 'in a manner that gives the defendant a reasonable opportunity either to use the evidence in the trial or to use the information to obtain evidence for use in the trial.'"  *United States v. Rittweger,* 524 F.3d 171, 180 (2d Cir. 2008)(citation omitted).  "'It is not feasible or desirable to specify the extent or timing of disclosure *Brady* and its progeny require, except in terms of the sufficiency, under the circumstances, of the defense's opportunity to use the evidence when disclosure is made.  Thus disclosure prior to trial is not mandated.'"  *Id.* at 180-81 (citation omitted).  *See also United States v. Coppa*, 267 F.3d 132, 144 (2d Cir. 2001)("as long as a defendant possesses *Brady* evidence in time for its effective use, the government has not deprived the defendant of due process of law simply because it did not produce the evidence sooner.   There is no *Brady* violation unless there is a reasonable probability that earlier disclosure of the evidence would have produced a different result at trial . . . .")(citations omitted).

Here, it is undisputed that plaintiff's criminal defense attorney had the essential facts that allowed him to take advantage of any exculpatory statements that Ms. Torres allegedly

made, since Ms. Torres essentially testified at trial that plaintiff was not the shooter, when she testified that (1) she saw the person who did the shooting; (2) she did *not* see the shooter in the courtroom and (3) that if she were to see the shooter on the day of her testimony, she would be able to recognize him.  (Ex. D at 7:23-8:7).  Thus, the crux of the exculpatory statement that was allegedly made immediately before her testimony began, that she did not believe that plaintiff was the shooter, was disclosed to defense counsel literally just minutes later when Ms. Torres testified to this effect.  Similarly, the essential facts of her statements purportedly made during the break to the effect that plaintiff was not the shooter had <u>already been revealed</u> to defense counsel through Ms. Torres' initial testimony.  Moreover, plaintiff's criminal defense attorney had a full opportunity to question Ms. Torres about anything that was said during this mid-testimony break, including whether or not she was pressured by the ADA to change her testimony, and thus this information was not suppressed.  *See Cheng v. Greiner*, 02 Civ. 4804 (DC), 2003 U.S. Dist. LEXIS 21286, at *16-17 (S.D.N.Y. Nov. 20, 2003)(Chin, J.)(no *Brady* violation where *Brady* material was provided mid-trial, since court offered to allow defense counsel to recall witnesses who had already testified, so that counsel could cross-examine them using the *Brady* materials that were provided after they had already testified). [4]

### 2.    The Alleged *Brady* Material Did Not Create a Reasonable Probability of a Different Outcome

Furthermore, in order to plausibly allege a *Brady* violation, plaintiff must plead facts that would make it plausible that there was a reasonable probability that, had the alleged *Brady* material not been withheld, the outcome of the trial would have been different.  *Coppa*,

---

[4]To the extent that plaintiff challenges the nondisclosure that the ADA told Ms. Torres that she "would be wrong to continue to deny that she recognized plaintiff on the witness stand" (Ex. A at ¶ 53), it is immaterial because that is exactly what the witness continued to do once she got back on the witness stand.  (Ex. D at 33:10-12; Ex. E at 88:9-89:5, 136:5-137:18).

267 F.3d at 144.  *See also Strickler v. Greene*, 527 U.S. 263, 289-90 (1999)(when determining whether evidence is material for *Brady* purposes "the question is not whether the [criminal] defendant would more likely than not have received a different verdict with the evidence" but rather whether "'there is a reasonable probability' that the result of the trial would have been different if the suppressed [evidence] had been disclosed to the defense").  Here, in addition to Ms. Torres, both Adam Rodriguez, a sanitation employee who witnessed the shooting, and, upon information and belief, Kantara Baragi, the victim, testified at trial that plaintiff was the shooter. (Ex. H at 50:9-21; See Ex. A at ¶ 15).  In fact, upon information and belief, both of these witnesses made in court identifications of plaintiff, something Ms. Torres never did (even after allegedly being pressured by the ADA).  Moreover, Ms. Torres testified that the shooter had told her his name during a previous encounter, and while she no longer remembered it, she remembered that his name started with a "D".  (Ex. D at 11:23-12:14).  Thus, even if there were a *Brady* obligation to reveal what Ms. Torres allegedly said in the hallway outside of the courtroom (above and beyond what was actually disclosed through Ms. Torres' testimony), the testimony of these two witnesses, as well as Ms. Torres' testimony that the shooter's name started with a "D", combined with the fact that the jury heard Ms. Torres testify, in essence, that plaintiff was not the shooter (See Ex. D at 7:23-8:7), means that plaintiff cannot meet his burden of showing that there was a reasonable <u>probability</u> that the outcome of the trial would have been different had this additional information been disclosed.  *See Strickler,* 527 U.S. at 291-96 (no *Brady* violation because even if a key eyewitness had been impeached with the evidence that was withheld, there was sufficient evidence from other sources that prevented the Court from finding that there would be a "reasonable probability" that the outcome would have been different).  Thus, even if plaintiff has alleged facts that would make it plausible that there is a reasonable

13

possibility that the outcome of the trial would have been different, that is not enough to make out a *Brady* claim. *See Id.* at 291 (citation omitted).

**B.**     **Municipal liability claims cannot be asserted against the City for prosecutorial acts of prosecutors to which they are entitled to absolute immunity.**

In *Van de Kamp v. Goldstein*, 555 U.S. 3335 (2009), the Court considered whether absolute prosecutorial immunity extends to claims against a District Attorney's office and its supervisory personnel which allege that that the prosecution failed to disclose impeachment material due to: (1) a failure properly to train prosecutors, (2) a failure properly to supervise prosecutors, or (3) a failure to establish an information system containing potential impeachment material about informants.   The Court held that a district attorney office's decisions regarding training and supervision on issues of law, specifically disclosure requirements under *Brady*, are prosecutorial functions entitled to absolute immunity and are not actionable against supervisors or the office.   The Court also determined that absolute immunity applied to a prosecutor's involvement in decisions about information system management.   In its discussion, the Court revisited and reinforced the long-standing principles established in *Imbler v. Pachtman,* 424 U.S. 409 (1976), that afford a prosecutor independence in his or her exercise of discretion without exposure to damages liability.   In so doing, the Court recognized that limiting claims for damages due to prosecutorial conduct, such as those brought by Goldstein and the plaintiff here, was a consequence outweighed by the policy considerations supporting absolute immunity.

Although *Van de Kamp* does not specifically address whether municipal liability may still lie for an alleged failure to train or supervise assistant district attorneys, *Van de Kamp's* reasoning requires the conclusion that municipal liability cannot lie for such failures, contrary to Second Circuit precedent in *Walker v. City of New York,* 974 F.2d 292 (2d Cir. 1992).   In

14

*Walker,* the Second Circuit held that an alleged failure to train on the part of the District Attorney's office with respect to *Brady* could give rise to municipal liability under *Monell.* To do so, the *Walker* court had to determine that the district attorney was a municipal policymaker and reject the city's argument that the district attorney's actions were undertaken as a state official and thus could not trigger municipal liability.

To overcome the City's position that the district attorney was acting in a quasi-judicial state capacity (*i.e.*, performing prosecutorial functions subject to absolute immunity), the *Walker* court specifically defined the district attorney's alleged "decision not to supervise or train ADA's on Brady and perjury issues," *id.* 301, as an "office management" function, analogous to hiring. Thus, the Court reasoned that when acting as the manager of the office, the district attorney was a county policymaker, and, because within New York City each of the district attorneys has "final, discretionary authority to implement training and supervision within their own office," each is considered a municipal policymaker. *Id.* However, *Van de Kamp*'s analysis fatally undermines the reasoning that decisions involving legal issues are something other than prosecutorial functions. In fact, in applying absolute immunity to supervisory acts of prosecutors, including acts involving decisions about training on *Brady* issues, *Van de Kamp* specifically held that such acts *are* prosecutorial in nature. *Van de Kamp,* 555 U.S. at 862. Such acts under *Imbler* are quasi-judicial and undertaken in a state capacity. The *Walker* court's characterization of such functions as managerial as opposed to prosecutorial enabled it to deem the district attorney's acts as undertaken outside of its quasi-judicial state capacity role and transform such acts into a basis for municipal liability. Under *Van de Kamp,* the *Walker* reasoning does not and cannot hold.

To allow *Walker's* transformation of a district attorney into a municipal policymaker when making decisions concerning prosecutorial matters to stand implicates the very concerns that drove the *Van de Kamp* court's decision to shield supervisors from liability when making decisions applicable to general office training.  The *Van de Kamp* Court was concerned that, by not affording absolute immunity to general office training decisions, supervisors' decisions would be influenced by concerns of widespread damages liability, which would completely undermine the rationale for absolute immunity and prior Supreme Court precedents which relieve prosecutors of the distractions of civil liability.

The same reasoning is applicable in the context of municipal liability insofar as supervisors should not be subjected to the possibility that their office-wide decisions on legal issues,  although individually immune now under *Van de Kamp,* may nonetheless result in municipal liability.  The freedom and unfettered discretion afforded prosecutors, protected in *Imbler* and reiterated so strongly in *Van de Kamp,* would be compromised, and in essence nullified, if the damages exposure is shifted to the municipality based on an artificial – and untenable, in light of *Van de Kamp* – distinction between trial-based and supervisory prosecutorial functions.

Recently, in *Jones v. City of New York*, 12-CV-1739 (JBW), 2013 U.S. Dist. LEXIS 179265 (E.D.N.Y. Dec. 20, 2013) (Weinstein, J.), the court rejected a similar *Monell* claim for alleged *Brady* violations by the Kings County District Attorney's Office.  Analyzing the dual nature in New York of the district attorney's identity as a State and City actor, the Court found that the City has no control over the policies set by the district attorney in New York.  *See Jones*, 2013 U.S. Dist. LEXIS 179265 at *21 ("The effect of treating a district attorney as a City policy maker in these situations is to hold the City or county liable for policies made by a district

attorney when no officer or agency of the City, including the Mayor, exercises any authority to control the decision."). Per *Walker*, the Court recognized that when handling certain administrative functions, like payroll and hiring, the district attorneys may act as municipal policymakers, *Jones*, 2013 U.S. Dist. LEXIS 179265 at *19-23. However, the Court found, when the district attorney is engaged in prosecutorial conduct, there actions concerning *Brady* issues, the City has no control, no municipal policymaker is involved, and no municipal policies or customs are at issue for *Monell* liability. *Id.* at *21-26. Underscoring the point, the Court analyzed the effect of *Van de Kamp* on *Walker*, and found that "tasks directly connected with the prosecutor's basic trial advocacy and prosecutorial duties — including *Brady* decisions – should under *Van de Kamp* be treated as "prosecutorial conduct'" and are entitled to absolute immunity. *Id.* at *24. Certainly, if training decisions on Brady issues are prosecutorial, so too are disciplinary decisions involving Brady issues.

Accordingly, plaintiff has failed to allege an actionable municipal policy or custom regarding Brady disclosures by the BXDAO, and has failed to state a claim for municipal liability under *Monell*.[5]

---

[5] To the extent, if any, that a claim against the City may lie if there is a long and persistent history of reckless training and discipline practices regarding personnel, plaintiff fails to allege any actionable history of similar *Brady* violations by the BXDAO. *See infra* at Point I(C)(1); *see also Connick v. Thompson*, 131 S.Ct. 1350, 1360 (2011) ("A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train."). Notwithstanding, defendants submit that even if such a history existed, no claim could lie as even indirect exposure to civil liability to the municipality would frustrate the purpose of absolute immunity (*see supra*).

**C.**     **Even if the City Could be Held Liable for the Actions, or Inactions, of the District Attorney, *and* Plaintiff Could Plead Facts to Make his Claim of an Underlying Constitutional Violation Plausible, Plaintiff Has Still Failed to Set Forth a Plausible *Monell* Claim**

Here, plaintiff's *Monell* claim essentially amounts to an allegation that the BXDAO failed to implement procedures that would prevent its ADAs from (1) using false, misleading or unreliable evidence, (2) failing to correct any false, inaccurate or misleading evidence once such misconduct is found to have occurred, (3) failing to timely disclose *Brady* materials and (3) coercing or manufacturing false or inherently unreliable statements from witnesses.  (*See* Ex. A at ¶¶ 74-76).  These allegations essentially amount to allegations that the BXDAO failed to adequately train, supervise and/or discipline its ADAs.  (*See Id.*).

A failure to train, discipline, or supervise may serve as a basis for § 1983 liability, but only in instances where a plaintiff can demonstrate both the requisite culpability as well as causation.  *See Morrissey v. City of New York,* 963 F. Supp. 270, 273 (S.D.N.Y. 1997).  "Courts apply 'rigorous standards of culpability and causation' to ensure that the municipality is not held liable solely for the unintended actions of an employee."  *Doe v. City of N.Y.*, No. 09 Civ. 9895 (SAS), 2013 U.S. Dist. LEXIS 30010, at *6-8, n.28 (S.D.N.Y. Mar. 4, 2013) (citations omitted). This standard is a stringent one, because adopting a lesser standard would leave municipalities open to "unprecedented liability under § 1983."  *City of Canton v. Harris*, 489 U.S. 378, 391-92 (1989).  With respect to culpability, plaintiffs must plead facts that would make it plausible that there was a 'deliberate indifference' or 'conscious disregard' to the rights of citizens.  *Morrissey,* 963 F. Supp. at 274-75.  Deliberate indifference constitutes more than negligence or even "heightened" negligence on the part of the municipality.  *Board of the County of Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 407 (1997).  Similarly, mere bureaucratic inaction cannot establish deliberate indifference.  *See Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 128

(2d Cir. 2004). To survive a motion to dismiss, plaintiff must allege facts to make it plausible that the municipality or its policymakers actually condoned such conduct and that the system is "so deficient as to reflect a policy of deliberate indifference to the civil rights of the citizenry." *See Sarus v. Rotundo*, 831 F.2d 397, 401-02 (2d Cir. 1987). *See also Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011) ("'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.")(citation omitted).

The Second Circuit "has identified three requirements before a municipality's failure to train or supervise constitutes deliberate indifference." *Jenkins v. City of New York*, 478 F.3d 76, 94 (2d Cir. 2007)(citation omitted). "First, the plaintiff must show that a policymaker knows 'to a moral certainty' that her employees will confront a given situation." *Id.* (citations omitted). Second, a plaintiff must demonstrate that the "situation either present[ed] the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation." *Id.* (citation omitted). Last, a plaintiff must demonstrate that "the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." *Id.* (citation omitted).

A "municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick,* 131 S. Ct. at 1359. Significantly, "evidence of one instance" in which municipal employees violated a citizen's rights is not enough to show that the conduct "constitute[s] a practice so manifest as to imply the constructive acquiescence of senior policy-making officials." *Newton v. City of New York*, 681 F. Supp. 2d 473, 487 (S.D.N.Y. 2010) ("a policy, custom or practice cannot arise from a single instance of unconstitutional conduct by an employee of the municipality"). Rather, the plaintiff must prove

a "pattern" of conduct, *see Reynolds v. Guiliani*, 586 F.3d 183, 192 (2d. Cir. 2007), that violates the civil rights of citizens "repeatedly," *Riccuiti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991), "persistent[ly]," *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d. Cir. 1983), on a "widespread" basis. *Green v. City of New York*, 465 F.3d 65, 80 (2d. Cir. 2006), and that involves the same type of evidence at issue in his case. *Connick,* 131 S. Ct. at 1360.

In order to support municipal liability, plaintiff must show that "city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights," but nevertheless "choose to retain that program." *Id*. at 1360. Plaintiff, in other words, must show "deliberate indifference" on the part of municipal policymakers. *Id*. Plaintiff can satisfy these requirements by proving "a pattern of similar constitutional violations by untrained employees" (which is "ordinarily necessary" to show deliberate indifference), or by proving that the specific violation that occurred in his case "was the obvious consequence" of the failure to provide necessary training, i.e., the "single incident" theory of liability first set forth in *City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989). *Connick,* 131 S. Ct. at 1360.[6]

While *Connick* dealt with a failure to train claim, "the stringent causation and culpability requirements," first established in *Canton* and affirmed in *Connick*, "have been applied to a broad range of supervisory liability claims," including claims for failure to supervise and/or discipline. Reynolds *v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007); *see also Thomas v.*

---

[6]    In the Second Circuit, the requirements for a failure to train claim are similar to those for failure to supervise or discipline. *See, e.g., Jenkins*, 478 F.3d 76, 94 (2d Cir. 2007) (setting forth requirements for *Monell* claim based on "municipality's failure to train or supervise" its employees). In *Jenkins*, the Second Circuit set forth the standard for making out a *Monell* claim for failure to train or supervise without making any distinction between the two claims. *See Id.* Plaintiff himself has essentially adopted this same standard in his pleadings. *Compare Jenkins*, 478 F.3d at 94 *with* Ex. A at ¶ 75.

*Roach*, 165 F.3d 137 (2d Cir. 1999) ("A municipality may be liable under § 1983 . . . where the City's failure to supervise or discipline its officers amounts to a policy of deliberate indifference").  Although the "persistent failure to discipline subordinates who violate civil rights could give rise to an inference of an unlawful municipal policy," *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) (emphasis added), "absent more evidence of supervisory indifference . . . a policy [can] not ordinarily be inferred from a single incident of illegality."  *Turpin v. Mailet*, 619 F.2d 196, 202 (2d Cir. 1980) (refusing to find a policy of indifference where the defendant officer was promoted rather than disciplined shortly after he was found liable for violating § 1983).[7]  Accordingly, in order to cross the line from "conceivable" to "plausible," a claim of supervisory indifference must be supported by facts suggesting a "pattern" of prior misconduct.

In the instant case, plaintiff has failed to plead sufficient facts to make it plausible that there was a pattern of similar *Brady* misconduct such that the need for more or better supervision and/or discipline was so obvious as to constitute deliberate indifference.

### 1.    Plaintiff Fails to Allege a Pattern of Similar Brady Violations by BXDAO.

In an attempt establish a pattern or practice of *Brady* violations, plaintiff has annexed to the complaint a list of fifty-six opinions in criminal cases.  These cases do not advance plaintiff's claim of municipal liability, because the overwhelming majority of these cases do not discuss *Brady* violations whatsoever, and the remaining cases are too few, too dissimilar, and too far removed in time to be relevant to any purported practices in place at the time of plaintiff's conviction.

At the outset, plaintiff's list of fifty-six cases is easily winnowed down to twenty-five cases that actually address a prosecutor's obligation to disclose evidence favorable to the

---

[7] *See* n. 5, *supra*.

defense.   The remaining thirty-one cases do not discuss disclosure obligations at all, and

therefore these cases are inapposite.[8]   Of the twenty-five cases that do discuss *Brady*, three were

decided after plaintiff's criminal trial in 2004[9], and thus cannot have provided the City with

"notice" of any alleged misconduct or training deficiencies.   *Connick*, 131 S. Ct. at 1360 n. 7.

The remaining twenty-two cases span a time frame from 1980—nine years before Robert

Johnson became the district attorney—to 2003.   Of the cases cited in the complaint that discuss

disclosure obligations, only seventeen[10] were decided from 1989, when DA Robert Johnson took

---

[8] *People v. Nunez,* 74 A.D.2d 805 (1st Dept. 1980); *People v. Galloway*, 77 A.D.2d 542 (1st Dept. 1980), *aff'd*, 54 N.Y.2d 396 (1981); *People v. DeJesus*, 88 A.D.2d 554 (1st Dept. 1982); *People v. Perez,* A.D.2d 468 (1st Dept. 1982); *People v. Ellis*, 94 A.D.2d 652 (1st Dept. 1983); *People v. Hicks*, 102 A.D.2d 173 (1st Dept. 1984); *People v. Hudson*, 104 A.D.2d 157 (1st Dept. 1984); *People v. Rosa,* 108 A.D.2d 531 (1st Dept. 1985); *People v. Bailey*, 121 A.D.2d 189 (1st Dept. 1986); *People v. Johnson*, 114 A.D.2d 210 (1st Dept. 1986); *People v. Hamilton*, 121 A.D.2d 176 (1st Dept. 1986); *People v. Ortiz*, 116 A.D.2d 531 (1st Dept. 1986); *People v. Bagarozy*, 132 A.D.2d 255 (1st Dept. 1987); *People v. Roman*, 150 A.D.2d 252 (1st Dept. 1989); *People v. Negron*, 161 A.D.2d 537 (1st Dept. 1990); *People v. World*, 157 A.D.2d 567 (1st Dept. 1990); *People v. Jorge*, 171 A.D.2d 498 (1st Dept. 1991); *People v. McReynolds*, 175 A.D.2d 31 (1st Dept. 1991); *People v. Butler*, 185 A.D.2d 141 (1st Dept. 1992); *People v. Hernandez,* 185 A.D.2d 147 (1st Dept. 1992); People v. Mudd, 184 A.D.2d 388 (1st Dept. 1992); People v. Shears, 184 A.D.2d 357 (1st Dept. 1992); *People v. Slaughter*, 189 A.D.2d 157 (1st Dept. 1993); *People v. Johnson*, 212 A.D.2d 362 (1st Dept. 1995); *People v. Williams*, 212 A.D.2d 388 (1st Dept. 1995); *People v. Olivero*, 272 A.D.2d 174 (1st Dept. 2000); *Morales v. Portuondo*, 165 F. Supp.2d 601 (S.D.N.Y. 2001); *People v. LaPorte*, 306 A.D.2d 93 (1st Dept. 2003); *People v. Spruill,* 5 A.D.3d 318 (1st Dept. 2004); *People v. Woods*, 9 A.D.2d 293 (1st Dept. 2004); *People v. Aquilar*, 14 Misc.3d 1 (Sup. Ct. Bronx Co. 2006).

[9] *People v. Poventud*, 10 Misc. 3d 337 (Sup. Ct. Bronx Co. 2005); *People v. Garcia*, 46 A.D.3d 461 (1st Dept. 2007); *People v. Ortiz*, 69 A.D.3d 490 (1st Dept. 2010).

[10] *People v. Castro* was decided in February of 1989, and thus the underlying trial took place before Johnson took office.  147 A.D.2d 410 (1st Dept. 1989).  The remaining sixteen cases are: *People v. Castro*, 147 A.D.2d 410 (1st Dept. 1989); *People v. Okafor*, N.Y.L.J. 9/8/89 at p.21; *People v. Olmo*, 153 A.D.2d 544 (1st Dept. 1989); *People v. Lewis*, 174 A.D.2d 294 (1st Dept. 1992); *People v. Banfield*, 194 A.D.2d 330 (1st Dept. 1993); *People v. White*, 200 A.D.2d 351 (1st Dept. 1994); *People v. Ramos,* 201 A.D.2d 78 (1st Dept. 1994); *People v. Rutter*, 202 A.D.2d 123 (1st Dept. 1994); *People v. Lantigua*, 228 A.D.2d 213 (1st Dept. 1996); *People v. Collins*, 173 Misc.2d 350 (Sup. Ct. Bronx Co. 1997); *People v. King*, 241 A.D.2d 329 (1st Dept. 1997); *People v. Mikel,* 274 A.D.2d 325 (1st Dept. 1997); *Mendez v. Artuz*, 202 F.3d 411 (2d Cir. 2002); *People v. Ortega*, 241 A.D.2d 369 (1st Dept. 1997); *Flores v. Demskie*, 215 F.3d 293 (2d

office, to 2004, when Felix was tried, the only time frame in which DA Johnson could conceivably have been put on notice of any *Brady* issues akin to those alleged to have taken place here.  *Connick*, 131 S. Ct. at 1360 (considering what cases would specifically have put Connick, the district attorney, on notice).

Further still, nine of these seventeen cases do not concern the type of disclosure violation alleged here—namely, failing to disclose prior witness statements.  The Supreme Court has stressed that "pattern" evidence of *Monell* liability must closely resemble the prosecutorial misconduct alleged; in *Connick,* the Court held that instances of other *Brady* violations was not enough, and suggested that the plaintiff would specifically need to show other cases where scientific or physical evidence was withheld, because the misconduct at issue in that case was withheld blood evidence.  *Connick*, 131 S. Ct. at 1360 ("Those four reversals could not have put Connick on notice that the office's *Brady* training was inadequate with respect to the sort of *Brady* violation at issue here.  None of those cases involved failure to disclose blood evidence, a crime lab report, or physical or scientific evidence of any kind.").  Measured against this high standard, the complaint here fails to allege facts supporting a pattern of unlawfully withheld witness statements.

For example, *Lewis* and *Banfield* concern the failure to disclose quid pro quo arrangements with cooperating witnesses.  *People v. Lewis*, 174 A.D.2d 294 (1st Dept. 1992); *People v. Banfield*, 194 A.D.2d 330 (1st Dept. 1993).  *Castro* involved the failure to disclose that the identity of a confidential information who provided information that led to the criminal defendant's arrest was the defendant's criminal co-defendant.  *People v. Castro*, 147 A.D. 2d

---

Cir. 2002); *People v. Johnson*, 191 Misc.2d 105 (Sup. Ct. Bronx Co. 2002); and *People v. Bruno,* Ind. No. 0027/97, N.Y.L.J., 4/23/03 at p.19.

410 (1st Dept. 1989).[11]  *Mikel* concerns a failure to disclose credibility evidence; specifically that that a witness had fled the country to avoid complying with a cooperation agreement, and had received a new agreement upon his return to the country.  *People v. Mikel*, 274 A.D.2d 325 (1st Dept. 1997).  In *Olmo*, the misconduct at issue was the prosecutor's knowing use of perjured testimony, because trial testimony in a parallel prosecution post-dating Olmo's conviction contradicted the police officer's account of events.  *People v. Olmo*, 153 A.D.2d 544 (1st Dept. 1989).   In contrast, *Rutter* and *Collins* arise from the failure of prosecutors to investigate witnesses in order to obtain evidence that might be exculpatory.  In *Rutter*, the prosecutor failed to obtain evidence from the Philadelphia Police Department, but the prosecutor turned the evidence over during the trial, as soon as it was obtained.  *People v. Rutter*, 202 A.D.2d 123 (1st Dept. 1994).  In *Collins*, the prosecution failed to investigate its witness, and it later came to light that the witness had an extensive history of psychiatric illness.  *People v. Collins*, 173 Misc.2d 350 (Sup. Ct. Bronx Co. 1997).  In *Mendez v. Artuz,* the misconduct at issue did not involve a prior witness statement at all, but instead the prosecution failed to disclose that another person had admitted to placing a contract on the life of the murder victim.  202 F.3d 411 (2d Cir. 2002). Finally, the decision in *Johnson* merely mentions *Brady* in passing, noting that an unspecified *Brady* violation affected the procedural history of the case.  *People v. Johnson*, 191 Misc.2d 105 (Sup. Ct. Bronx Co. 2002).  This unspecified disclosure violation cannot provide factual support for plaintiff's complaint, as the opinion does not offer any facts that suggest that the type of misconduct alleged here occurred in *Johnson*.

---

[11] Defendants note that the *Castro* decision cited by plaintiff did not actually find a *Brady* violation.  Instead, the court found that the allegations were sufficient to warrant a hearing, and among other things to be determined at the hearing was whether this failure to reveal the identity of the confidential informant was material.  *See Castro*, 147 A.D.2d at 411.  There is no indication as to whether or not the court actually found a *Brady* violation in this matter.  *See Id.*

None of the cases involving prior witness statements – the remaining 8 of the 17 – can be interpreted to have given notice to the BXDAO that the circumstances alleged here by plaintiffs amounts to a *Brady* violation—i.e., an alleged failure by the ADA to disclose witness statements that the witness herself effectively disclosed on the stand minutes later and where defense counsel had a full opportunity to explore her testimony, its inconsistencies and the circumstances surrounding it.   Defense counsel in these cases had no timely opportunity to explore the disclosures, either because the disclosures were made post-trial or because the Court during a trial or hearing refused to afford defense counsel the opportunity to explore them.   The complaint cites *Okafor, Flores,* and *White,* which concern withheld police officers' notes of witness statements that were not produced until after a verdict had been reached in the trials, not mid-trial statements to a prosecutor that were essentially revealed through the witnesses' testimony.   *People v. Okafor*, N.Y.L.J. 9/8/89 at p.21; *People v. White*, 200 A.D.2d 351 (1st Dept. 1994);[12] *Flores v. Demskie*, 215 F.3d 293 (2d Cir. 2002)(finding *Rosario* violation, not a *Brady* violation).   *Ramos*, which concerns withheld notes from a daycare worker who testified in manner inconsistent with her notes at trial, and which were not produced until long after the trial, is inapposite for similar reasons.   *People v. Ramos*, 201 A.D.2d 78 (1st Dept. 1994).   Plaintiff offers *Lantigua* in support of his claim, but there, the prosecutor failed to disclose the identity of a witness, and also allowed the sole witness who was able to connect the criminal defendant to the crime to testify that she was alone when she witnessed the crime, although she had told the trial assistant, long before trial, that she was with a boyfriend at the time (the witness whom the prosecutor failed to disclose), without the record being corrected on this point and no effective

_____

[12] Defendants note that the *White* court analyzed the materiality of the withheld documents under a "reasonable possibility" standard rather than the "reasonable probability" standard

disclosure having taken place during trial. *People v. Lantigua*, 228 A.D.2d 213, 219-21 (1st Dept. 1996). Likewise, *Bruno* arises from a withheld statement that was made to a prosecutor long before a trial and disclosed after trial; in *Bruno*, a prosecutor stepped forward after a trial to say that she had heard officers say that they had threatened to arrest the defendant's pregnant wife in order to induce a confession and obtain consent to search an apartment. *People v. Bruno*, Ind. No. 0027/97, N.Y.L.J., 4/23/03 at p.19.[13] *King* concerns the failure to disclose the testifying victim's submission to the Crime Victim's Compensation Board in connection with her request for compensation until just prior to summation, combined with the fact that the trial court did not allow defense counsel to recall the witness so she could be cross-examined on this newly disclosed evidence. *People v. King*, 241 A.D.2d 329, 330 (1st Dept. 1997). It was the failure of the trial court in *King* to allow defense counsel to cross-examine the witness after this information was disclosed, that turned what would have been a "mere delay" in providing the information into a failure to provide it. *Id.* ("the failure by the prosecution to produce *Rosario* material prior to the testimony of the witnesses, coupled with the trial court's refusal to recall these witnesses, amounts to a complete failure rather than a mere delay in turning over the statements")(citation omitted). Lastly, the misconduct at issue in *Ortega* was the prosecutor's failure to disclose a witness' rebuttal grand jury testimony prior to a pre-trial hearing, which is distinct from a mid-trial oral statement. *People v. Ortega*, 241 A.D.2d 369 (1st Dept. 1997). Moreover, similar to *King*, the court found that the only reason this was considered a failure to

---

established by the Supreme Court. *See White*, 200 A.D.2d at 353. *Cf. United States v. Bagley,* 473 U.S. 667, 682, 685 (1985)(establishing "reasonable probability" as the correct standard).

[13] Defendants have included *Bruno* as a case involving failure to disclose witness statements out of an abundance of caution. However, it is questionable as to whether or not it even fits within this category, as the issue in *Bruno* was the failure to disclose statements made by the police during their questioning of the criminal defendant and his wife, not statements made by the witnesses themselves.

disclose the materials, as opposed to a "mere delay in disclosure," is that the trial court refused to re-open the pre-trial hearing to allow defense counsel to cross-examine the witness with the newly produced evidence. *Id.* at 371 (citations omitted). This is distinguishable from the instant action, where defense counsel had a full opportunity to cross-examine Ms. Torres based on the exculpatory statements that were revealed through Ms. Torres' testimony.

Based upon the foregoing, it is clear that plaintiff has not plausibly alleged municipal liability, because the decisions he cites are either (1) outside of the relevant time frame, or (2) are too factually dissimilar to support plaintiff's allegation of a pattern of *Brady* violations by prosecutors at the BXDAO. Moreover, considering that the BXDAO's Office tried hundreds if not thousands of cases between 1989 and 2004, a handful of cases involving disparate types of disclosure violations can hardly be said to be a "pattern" of misconduct. *Jovanovich v. City of New York*, No. 04 CV 8437 (PAC), 2010 U.S. Dist. LEXIS 144388, at *49 (S.D.N.Y. Sept. 28, 2010) (holding that plaintiff's list of only seven Appellate Division decisions involving improper comments in summation is was insufficient to establish that DA's office was on notice of its allegedly deficient training or that those deficiencies were the result of deliberate indifference).

Accordingly, plaintiff has not plausibly alleged that the Bronx County District Attorney's Office had a pattern or practice of failing to disclose *Brady* evidence at the time of plaintiff's conviction or that any specific deficiency in training, supervision or discipline could have addressed such disparate misconduct.

## POINT II

## PLAINTIFF FAILS TO ALLEGE A BRADY VIOLATION BY DET. MORALES

Plaintiff alleges that Det. Morales committed a *Brady* violation by (1) failing to disclose to prosecutors that Ms. Torres initially stated that the picture of plaintiff she viewed in a photo array "look[ed] like" the shooter, and (2) that <u>after</u> Ms. Torres indicated that she was sure that plaintiff was the shooter, Det. Morales told her that she had picked out the person who had been arrested.  (See Ex. A at ¶¶ 21-32, 95-99).  However, as neither of these statements can be classified as *Brady* materials, all claims against defendant Morales should be dismissed.

All that is required under *Brady* is that the prosecution disclose "evidence favorable to the accused that is material to guilt."  *United States v. Rittweger*, 524 F.3d 171, 180 (2d Cir. 2008)(citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963)).  *See also Strickler v. Greene*, 527 U.S. 263, 281-82 (1999) (holding that to establish a *Brady* violation, "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued").  With respect to the allegation that Ms. Torres initially said that plaintiff only "look[ed] like" the shooter, this is simply not an exculpatory statement in isolation, and thus would not be *Brady* material.  If anything, such a statement is consistent with guilt rather than inconsistent with guilt.  Moreover, there is no allegation that Det. Morales pressured Ms. Torres to identify plaintiff; it is merely alleged that he just asked a follow up question as to whether or not Ms. Torres was "sure" plaintiff was the shooter; to which Ms. Torres indicated that she was.  (Ex. A at ¶¶ 24-26).  These statements are not inconsistent with each other and nothing about the first statement (that he "looked like" the shooter) is contradicted by the second statement (that she was "sure" he was the shooter).

Furthermore, Det. Morales' purported statement to Ms. Torres that she picked out the person who was arrested, was made <u>after</u> she said she was "sure" that the person she picked out was the shooter (Ex. A at ¶¶ 25-26), and thus this obviously could not have possibly affected her initial positive identification.  Any argument that it confirmed to her that she picked out the right guy and therefore influenced her trial testimony does not hold any water, since she walked into court and testified that the criminal defendant was not the shooter, despite necessarily knowing at that point that (1) the criminal defendant had been arrested for the shooting and (2) the criminal defendant was the person whose picture she had picked out.  Moreover, both of these alleged statements also cannot be material since even if both of these purported statements were produced, there would not have been a reasonable <u>probability</u> that the outcome of the trial would have been different, particularly in light of all of the other evidence of plaintiff's guilt that was presented at the trial.[14]  *See Strickler* 527 U.S. at 289-91.

To the extent that plaintiff is also attempting to bring a denial of a right to a fair trial claim against defendant Morales regarding fabrication of evidence (See Ex. A at ¶¶ 95-96, 98), any such claim must also be dismissed.  In order to bring a § 1983 claim for denial of a fair trial, a plaintiff must plausibly allege that "an (1) investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result."  *Jovanovic v. City of New York*, 486 Fed. Appx. 149, 152 (2d Cir. 2012)(citing *Jocks v. Tavernier*, 316 F.3d 128, 138 (2d Cir. 2003) and *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997)).  Here, any such claim must fail because there is no allegation that Det. Morales fabricated any evidence whatsoever.  (See Ex. A at ¶¶ 11-39).  To the extent plaintiff argues that Det. Morales fabricated Ms. Torres'

---

[14] *See* Point I(A), *supra*, and the Statement of Facts for a fuller discussion of the evidence of

positive identification, it is undisputed that Ms. Torres told Det. Morales that she was "sure" that plaintiff was the shooter.  (*Id.* at ¶ 25-26).  Furthermore, as noted above, there are no allegations that Det. Morales pressured or coerced Ms. Torres in any way, shape or form, to make this positive identification of plaintiff.  (See *Id.* at ¶¶ 11-39).  The only allegation is that he merely asked Ms. Torres if she was "sure" that plaintiff was the shooter, and that Ms. Torres responded that she was sure it was him.  (*Id.* at ¶ 25-26).

Accordingly, any claims brought against defendant Morales must be dismissed.

**POINT III**

**DET. MORALES IS ENTITLED TO QUALIFIED IMMUNITY**

As argued in Point II, *supra*, the statements allegedly made by and to Ms. Torres during the photo array were not exculpatory in nature and could not have influenced her testimony at trial, and thus cannot be considered *Brady* material.  However, even if the Court disagrees, Defendant Morales is still entitled to qualified immunity as reasonable police officers could disagree as to whether or not this constituted *Brady* materials.

Qualified immunity "shields public officials from liability for their discretionary acts that do 'not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Hathaway v. Coughlin*, 37 F.3d 63, 67 (2d Cir. 1994) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Even when a plaintiff's federal rights are well-defined, a defendant may successfully claim qualified immunity "if it was objectively reasonable for the public official to believe that his acts did not violate those rights."  *Kaminsky v. Rosenblum*, 929 F.2d 922, 925 (2d Cir. 1991).  "An officer's actions are objectively

plaintiff's guilt that was adduced at trial.

unreasonable when no officer of reasonable competence could have made the same choice in similar circumstances." *Lennon v. Miller*, 66 F.3d 416, 420-21 (2d Cir. 1995). On the other hand, if reasonable officers could disagree as to the legality of the conduct, then the officer must be granted qualified immunity. *See Id.* at 421. *See also Malley v. Briggs,* 475 U.S. 335, 341 (1986) ("if officers of reasonable competence could disagree on [the legality of the conduct], immunity should be recognized"). The main "concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct." *Saucier v. Katz*, 533 U.S. 194, 205 (2001). Thus, qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Id.* at 202 (citation omitted). As qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation," the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Id.* at 200-201 (internal citations and quotations omitted).

Here, even if the Court finds that plaintiff has pleaded facts that would make his claims against defendant Morales plausible, for all of the reasons set forth in Point II *supra*, reasonable officers could disagree as to the legality of defendant Morales' conduct. Specifically, at a minimum reasonable officers could disagree as to whether or not stating that a suspect "looked like" the shooter was actually an exculpatory statement that needed to be forwarded to prosecutors or would create a reasonable probability that the outcome of the trial would be different. Especially here, where the witness' very next comment was that she "sure" that this was the shooter, and there are no allegations that the officer coerced or threatened her to make a positive identification. Similarly, at a minimum, reasonable officers could disagree as to whether or not telling a witness, <u>after</u> she has already said that she was "sure" the individual she picked

out in a photo array was the shooter, that the person she picked out was the person who was arrested, was somehow exculpatory in nature or material to guilt.  At most this would be a harmless error, as any person of ordinary intelligence would be able to infer at the time they were testifying at trial that the criminal defendant had been arrested for the crime and that the person arrested was the person picked out in the photo array; particularly here where the witness was called by the prosecution to specifically recount who she identified in the photo array.  Thus, all this alleged statement did is tell the witness what the witness would already have been able to figure out on her own.  It certainly did not create a reasonable probability that the outcome of the trial would be different.

Accordingly, defendant Morales is entitled to qualified immunity from liability.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss the complaint in its entirety with prejudice should be granted under Fed. R. Civ. P. 12(b)(6).

Dated:        New York, New York
              January 10, 2014

                              JEFFREY D. FRIEDLANDER
                              Acting Corporation Counsel of the
                              City of New York
                              *Attorney for Defendants City of New York
                              and Det. Morales*
                              100 Church Street
                              New York, New York 10007
                              (212) 356-3534


                              By:  _____/s_____
                                   Michael Chestnov
                                   Linda Donahue
                                   Senior Counsels
                                   Alison G. Moe
                                   Assistant Corporation Counsel